### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NML CAPITAL, LTD.,<br><br>     Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>     Defendant. | Case No. 1:14-mc-01237 (RCL)<br><br>Hon. Royce C. Lamberth<br><br>(This action is currently pending in the United States District Court for the Southern District of New York as Case Nos. 03 Civ. 8845 (TPG), 05 Civ. 2434 (TPG), 06 Civ. 6466 (TPG), 07 Civ. 1910 (TPG), 07 Civ. 2690 (TPG), 07 Civ. 6563 (TPG), 08 Civ. 2541 (TPG), 08 Civ. 3302 (TPG), 09 Civ. 1707 (TPG), 09 Civ. 1708 (TPG)) |

## OPPOSITION OF CÉSAR GUIDO FORCIERI TO NML'S EMERGENCY MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

### I.      Preliminary Statement

There are no outstanding obligations under the subpoena plaintiff NML now seeks to enforce.  In September 2014, César Guido Forcieri was served with a third-party subpoena for documents and deposition by Plaintiff NML Capital, Ltd.  Mr. Forcieri responded responsibly and appropriately.  He complied without objection or assertion of privilege to the subpoena for documents.  And following an express agreement between his counsel and counsel for NML, Mr. Forcieri fully satisfied his obligations under the deposition subpoena.  NML simply does not like the deal it struck, does not like the answers it received, and now wants to retrade.

On the late afternoon of November 4, 2014, NML filed an Emergency Motion to Compel, urging this Court to issue an order declaring Mr. Forcieri in contempt of Court and to take the extreme measures of enjoining Mr. Forcieri—a non-party—from leaving the United States and requiring him to relinquish his passport until he complies with NML's subpoena.

Mot. to Compel at 1.[1] NML implies that Mr. Forcieri's departure is somehow related to this third-party subpoena, when in fact it is a planned move home predating the NML subpoena.

The omissions and misrepresentations in NML's moving papers are glaring, though not because of space limitations. Nowhere in the more than 460 pages of its submission does NML mention that counsel for NML and counsel for Mr. Forcieri had agreed to an alternative arrangement, drafted by counsel for NML, that would constitute satisfaction of the deposition subpoena, and that Mr. Forcieri fully complied with his obligations under the subpoena by answering every question posed by NML's counsel during a voluntary interview—akin to a proffer—on October 30, 2014, which lasted more than two and one half hours.

Mr. Forcieri respectfully requests that this Court deny the Motion to Compel in its entirety. *First*, there is no valid, outstanding subpoena to be enforced. Mr. Forcieri complied with the document production demands and satisfied in full the express alternative agreements by counsel, extinguishing his remaining obligations. *Second*, NML remains free to obtain evidence from Mr. Forcieri in the future. Upon his departure from the United States, Mr. Forcieri will return to his home in Argentina, which has been a signatory nation to the Hague Convention for many years. *Third*, NML is attempting to use its leverage on an unindemnified former civil servant in hopes that it will affect the conduct of a sovereign nation. With NML's consent and agreement, Mr. Forcieri has given NML more information than it could otherwise have obtained, and Mr. Forcieri should not be punished because NML is unhappy with what it learned.

Finally, if forced to do so in a formal setting, Mr. Forcieri intends to assert his Constitutional privilege against self-incrimination. While we think the subpoena has been fully

---

[1] "Mot. to Compel" refers to NML's Emergency Motion to Compel Compliance With Subpoena, filed on November 4, 2014.

satisfied, should the Court compel a formal deposition of Mr. Forcieri, we ask that the Court permit him to do so by way of affidavit, or, at the very least, limit the deposition in scope and duration, for the purpose of confirming that Mr. Forcieri will assert his Fifth Amendment privilege as to the topics of NML's inquiry.

There is nothing in this long-running collections case, or in the blizzard of theories and allegations about other third parties, that suggests Mr. Forcieri should be deprived of his right to travel. He is a third party. He has performed what he promised to NML, and what he was obligated to do. He is not fleeing anything, but simply returning to his home in Argentina, and the plaintiff has no basis to prevent him from doing so, other than harassment.

## II.   Factual Background

NML is a very large hedge fun, with a very large ($1.7 billion) judgment against the Republic of Argentina, and obviously a very large budget for its lawyers. The subpoena here pertains to NML's debt collection efforts, and its attempt to locate assets outside of Argentina, including in the United States, that might be available to satisfy that judgment. The facts of the collections case and the challenges NML has encountered in obtaining discovery from the Argentine government are explained in the Motion to Compel, but are *irrelevant* for purposes of this motion. We are focused solely on the third-party subpoena served on Mr. Forcieri, and his compliance with that subpoena.

Mr. Forcieri is a thirty-four year old Argentine national who was previously a civil servant for the Argentine government. On September 10, 2014, the instant subpoena was served on Mr. Forcieri at his rental home in Maryland, where he lived while on an assignment with the World Bank as the representative for Argentina and four other South American nations.

Mr. Forcieri engaged Bruch Hanna LLP to serve as his counsel in connection with the subpoena. Bruch Hanna contacted Dechert LLP, counsel for NML, regarding the subpoena. During the course of their discussions, Bruch Hanna voluntarily advised Dechert that Mr. Forcieri had longstanding plans to return permanently to Argentina on November 8, 2014, after his World Bank assignment concluded. Mr. Forcieri's intention to return permanently to Argentina predated service of the subpoena. Bruch Hanna also notified Dechert that if deposed, Mr. Forcieri would assert his Constitutional privilege against self-incrimination.

### 1.   Document Request

Contrary to NML's characterization, Mr. Forcieri did not object to the subpoena for documents. Rather, after conducting a search of his personal documents, he produced a copy of the only responsive document in his possession—his submission to the Argentine Court investigating some of the matters covered by the subpoena. Bruch Hanna explained to Dechert that Mr. Forcieri did not have access to additional responsive documents, and that any communications with his former superior, Argentine Vice President, Amado Boudou, occurred while Mr. Forcieri was an employee of the Argentine government or of the World Bank, and took place through work-place means. Bruch Hanna advised Dechert that NML would need to obtain any such records, if they exist, directly from the Argentine government or the World Bank.

### 2.   Deposition Request

Bruch Hanna and Dechert specifically agreed that if, after reading the statement that Mr. Forcieri produced, NML felt the need to interview him, Mr. Forcieri would consider an alternative arrangement, other than a deposition where he would assert his Constitutional

privilege.  Motivated by the opportunity to obtain substantive information it otherwise would not

get, counsel for NML agreed.

On October 23, 2014, following a discussion between Bruch Hanna and Dechert, Dennis

Hrantizky, a partner with Dechert, authored an e-mail setting forth the terms under which

Dechert would agree to such an alternative arrangement.  He set forth four conditions:

1. Mr. Forcieri *will speak freely* about the matters set forth in the subpoena, in exchange for which;

2. NML will not take the position that, by doing so, Mr. Forcieri has waived his Fifth Amendment privilege with respect to any of the matters he discusses with NML;

3. NML will keep the fact of the meeting confidential, and will not reveal that Mr. Forcieri was the source of any of the information he provides to NML; and

4. *NML will deem the subpoena to have been complied with in full.*

(Emphasis added).  Ex. 1 to the Declaration of Gregory S. Bruch (hereinafter "Ex. 1") at 16.  In

subsequent e-mails, Dechert reiterated those conditions, and said that it would only seek judicial

intervention if it had "good reason" to do so.  Ex. 1 at 10.

In other words, NML accepted a voluntary interview—akin to a proffer—from Mr.

Forcieri in lieu of a formal deposition.  The only condition was that Mr. Forcieri would "speak

freely about the matters set forth in the subpoena."  As documented in the e-mail exchange,

Dechert agreed that NML would take the position that Mr. Forcieri had not waived his Fifth

Amendment privilege, would keep the fact of the meeting confidential, and would "deem the

subpoena to have been complied with in full."  Ex. 1 at 16.

On October 30, 2014, a Dechert attorney and an investigator retained by Dechert

conducted a voluntary interview of Mr. Forcieri.  Mr. Forcieri answered every question he was

asked and allowed Dechert the full amount of time it needed to complete the interview.  Mr.

Forcieri asserted no privilege or objection. Bruch Decl. ¶ 13-14. Mr. Forcieri therefore

complied with his obligations under the subpoena, as modified by the agreement of Bruch Hanna

and Dechert.

However, on November 3, 2014, Dechert notified Bruch Hanna of its intention to seek

relief in this Court if Bruch Hanna did not offer a deposition date for Mr. Forcieri within twenty-

four hours. Bruch Decl. ¶ 15. In response, on November 4, 2014, Bruch Hanna submitted a

letter detailing its position that Mr. Forcieri had fully complied with his obligations under the

subpoena. Even so, Bruch Hanna offered additional avenues through which NML could proceed

if it required additional information from Mr. Forcieri. Namely, Bruch Hanna suggested that

NML could request additional discovery from Mr. Forcieri upon his return to Argentina, through

the appropriate procedures under the Hague Convention. Bruch Hanna also suggested that Mr.

Forcieri could submit an affidavit asserting his Fifth Amendment rights, in lieu of appearing for a

formal deposition. Ex. 1 at 1-5.

Dechert did not respond to Bruch Hanna's November 4, 2014 letter. Shortly after 5:00

pm on November 4, 2014, Dechert sent Bruch Hanna a copy of its Motion to Compel and related

documents by e-mail. Bruch Decl. ¶ 17.

Mr. Forcieri is scheduled to permanently return to Argentina on November 8, 2014. He

has already completed his assignment at the World Bank and moved out of his rental home in

Potomac, Maryland.

### III.    Argument

A motion to compel may be filed after counsel, in good faith, has discussed the motion

with the other party. LCvR 7(m); F.R.C.P. 37(a)(1). When considering a motion to compel,

courts review the relevance of the information requested, the parties' prior attempts to settle the

dispute, and Fed. R. Civ. Pro. 26(b)(2)(C) limitations. *Barnes v. D.C.*, 289 F.R.D. 1, *5-6 (D.D.C. 2012).  The burden of proving the discovery response inadequate lies with the party moving to compel discovery. *Id.* at *6 (citations omitted).  Once the moving party has established incompleteness, the opposing party must show that the requests are burdensome, vague, overly broad or otherwise fall within the limitations of Fed. R. Civ. Pro. 26(b)(2)(C). *Id.* at *22-23.  A production is incomplete if the court makes a "reasonable deduction" that "other documents may exist or did exist and have been destroyed." *Id.* at *25 (citations omitted). Theoretical possibilities and speculation that additional responsive documents exist is insufficient. *Id.*

       NML has failed to meet its burden of proving that Mr. Forcieri's response to its subpoena was inadequate.  The Motion to Compel and accompanying Declaration of Dennis Hranitzky misstate the facts affirmatively and by omission in an effort to suggest that Mr. Forcieri is evading his obligations under the subpoena.  A fair rendering of the facts proves otherwise.  Mr. Forcieri acted in good faith to fully comply with his obligations under the subpoena before his return to Argentina.  Mr. Forcieri has already fully complied with the subpoena, as modified by the express agreements of counsel.  While NML may be dissatisfied with the substance of the information Mr. Forcieri provided during his October 30, 2014 proffer, it cannot now have another bite at the apple through a motion to compel documents that Mr. Forcieri does not possess and a deposition that NML previously agreed was not required.

       1.   Mr. Forcieri does not dispute NML's authority to serve the subpoena.

       Mr. Forcieri does not dispute that NML has the authority to seek discovery from non-parties pursuant to Fed. R. Civ. Pro. 69(a)(2) and Fed. R. Civ. Pro. 45.  Rather, his counsel

attempted to negotiate a reasonable resolution to comply with the subpoena—an outcome which Mr. Forcieri and his counsel believed they had achieved.

### 2. Mr. Forcieri complied with the document production obligations of the subpoena.

NML's subpoena seeks "documents that may point to the location of Argentina's assets in the United States or abroad." Mot. to Compel at 2. NML contends that by producing only one document, Mr. Forcieri failed to comply with the request for documents. Mot. to Compel at 14-15. As explained above, however, Mr. Forcieri conducted a diligent search for responsive documents in his possession, custody or control. Bruch Hanna explained the obvious point that Mr. Forcieri could not search or produce responsive documents that may be in the files of the Republic of Argentina or the World Bank. Bruch Decl. ¶ 8. The responsive document he located was produced to Dechert.

NML now simply asserts, without support or evidence, that Mr. Forcieri must have additional documents. This assertion provides no basis for the contempt sanction NML seeks.

### 3. Mr. Forcieri complied with the testimonial obligations of the subpoena.

NML contends that Mr. Forcieri "failed to appear for the deposition noticed for October 20 without proposing an alternate date on which he is willing to appear." Mot. to Compel at 15. Mr. Forcieri did not "fail to appear" for an October 20, 2014 deposition. Bruch Hanna and Dechert had discussed the possibility of Mr. Forcieri sitting for an informal interview in lieu of a deposition several days before October 20th. Bruch Decl. ¶ 10. As confirmed by e-mail correspondence between counsel, if Mr. Forcieri spoke "freely" during that interview, NML would consider him to have fully complied with the subpoena. Ex. 1 at 16.

On the afternoon of October 30, 2014, Mr. Forcieri appeared for and spoke freely during a two-and-one-half hour proffer with counsel for NML, thereby satisfying his obligations under

the subpoena. Bruch Decl. ¶ 13-14. Curiously, Mr. Hranitzky now asserts that "by the afternoon

of October 30, 2014"—the very afternoon his colleagues were at Bruch Hanna's office

conducting the proffer—"it had become apparent that the parties were at an impasse and that

Forcieri was not willing to appear for a deposition or make any further production of

documents." Hranitzky Decl. ¶ 41.

   In its phone call that constituted a meet and confer for purposes of this motion, Dechert

attorneys could only say that they did not find Mr. Forcieri's proffer statements "credible" on

several categories of inquiry, and that he "must have" known more than he reported. Bruch

Decl. ¶ 15. These comments only underscore that Dechert and NML's grievance in this matter is

that they simply do not like what Mr. Forcieri said. There was no further discussion following

the Bruch Hanna letter, other than to receive this emergency motion in the evening.

     **4.** <u>Mr. Forcieri did not assert the Fifth Amendment's protections to avoid</u>
       <u>compliance.</u>

   NML asserts that "[t]he only excuse offered by Forcieri's counsel for this non-

compliance is that Forcieri intends to plead the protections of Fifth Amendment privilege against

self-incrimination, and that it would be pointless for him to appear for a deposition at which he

would be unwilling to provide sworn testimony." Mot. to Compel at 15.

   First, Mr. Forcieri has never taken the position that he was excused from compliance with

the subpoena because of his intention to invoke the Fifth Amendment's protection against self-

incrimination. Mr. Forcieri did not withhold any documents on grounds of the Fifth Amendment

privilege. While Bruch Hanna advised Dechert that Mr. Forcieri would invoke his Fifth

Amendment privilege if he were deposed, they did not assert that Mr. Forcieri should therefore

be excused from compliance with the subpoena. To the contrary, Bruch Hanna worked with

Dechert to reach a resolution that would reasonably accommodate Mr. Forcieri's concerns about

preserving his rights under the Fifth Amendment, while allowing NML to obtain the information it sought under the subpoena. Bruch Decl. ¶ 10-11. Through the terms agreed upon by counsel, NML made a knowing decision to give up its right to a deposition in exchange for a face-to-face, unrestricted interview subject to the proffer agreement between counsel, which it otherwise could not have obtained. Ex. 1 at 16.

Even after Mr. Forcieri's proffer, he did not use his Fifth Amendment rights as an "excuse" to avoid compliance. On November 3, 2014, Dechert informed Bruch Hanna that they intended to seek judicial intervention if Mr. Forcieri did not appear for a formal deposition. Bruch Decl. ¶ 15. Although Mr. Forcieri had satisfied fully his obligations under the subpoena, in an effort to accommodate NML and avoid burdening this Court and our client with a judicial action, Bruch Hanna offered to submit an affidavit, jointly agreed on by the parties, wherein Mr. Forcieri could assert his Fifth Amendment rights. Ex. 1 at 2-5. This approach would have avoided the unnecessary time and resources of taking Mr. Forcieri's deposition, while achieving the same result for NML. Dechert never responded to the Bruch Hanna letter other than to mischaracterize it in a single paragraph tucked among the 460 pages.[2]

Second, Mr. Forcieri is entitled to assert his Constitutional privilege against self-incrimination in a formal deposition. The complex set of allegations, facts, and rumors that give rise to a 460 page submission in this emergency matter, involve US entities, including financial institutions, US persons, and, presumably, US jurisdictional means, if the introduction to NML's

---

[2]    The Declaration of Dennis Hranitzky simply says of the letter: "Shortly after 12:00 today, we received a letter from Mr. Forcieri's counsel. The substance of the letter was that Mr. Forcieri would not appear for a deposition unless compelled to do so by Court order, therefore [sic] we are forced to file this Motion to Compel." The full letter is attached hereto for the Court's own assessment of its substance. Hranitzky Decl. ¶ 43.

subpoena is taken at its word.[3]  Without conceding that Mr. Forcieri engaged in any wrongdoing, in the US or elsewhere, there can be no serious dispute that he has a valid Constitutional privilege to assert should this matter proceed to a formal, sworn deposition.

### 5. NML is not entitled to the requested relief.

NML has asked this Court to compel compliance with its subpoena, issue a contempt order, enjoin Mr. Forcieri from leaving the country, and revoke his passport.  Each of those measures is unwarranted.  As demonstrated above, Mr. Forcieri has fully satisfied his obligations under the subpoena, as modified by agreement of counsel.

There is no basis to for the extraordinary remedy of enjoining Mr. Forcieri from returning to his home country or revoking his passport, which is a harsh and "very rare" remedy.  *See Mellott v. MSN Communs., Inc.*, 2010 U.S. Dist. LEXIS 134449, at *65 (D. Colo. Dec. 8, 2010) (noting that an order to surrender a passport is "very rare" in civil cases other than matrimonial affairs).

An order requiring a *defendant* to relinquish his passport may be appropriate where he has "demonstrated a propensity to leave the country when the heat is turned up."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Kupperman,* 2007 U.S. Dist. LEXIS 57347, at *4-6 (D.N.J. Aug. 7, 2007).  Courts look to a party's past behavior and are much less likely to grant the surrender of a passport when a party "always follow[s] the rules."  *Herbstein v. Bruetman*, 241 F.3d 586, 588-89 (7th Cir. 2001).

Unlike the foreign nationals in the cases NML cites, Mr. Forcieri is not a party, and his past behavior does not demonstrate a history of noncompliance with court orders or default

---

[3]     The NML subpoena itself contains an eight-page, single-spaced description of allegedly illegal conduct and schemes.  Query what purpose is served by an exposition such as this in a subpoena, other than to harass or embarrass a witness or adversary.

judgments. *See, e.g., Herbstein v. Bruetman,* 241 F.3d 586 (7th Cir. 2001) (denying defendant's request for the return of his passport after noting the defendant's long standing history of untrustworthy behavior and failure to disclose his assets); *U.S. v. Barnette*, 129 F.3d 1179 (11th Cir. 1997) (finding the defendant did not satisfy a forfeiture judgment and in contempt after an eleven year history of noncompliance); *U.S. v. Brumfield*, 188 F.3d 303 (5th Cir. 1999) (requiring defendant to surrender his passport after he failed to comply with the court's order to produce documents related to his underlying conviction and unpaid penalties). Indeed, Mr. Forcieri is not running from accountability, but rather returning to Argentina where he will be able to face his accusers, on many of the same facts, using the Argentine justice system.

NML has offered no legal authority that would cause a court to revoke the passport of a non-party, let alone a non-party who had longstanding plans to leave the country and made efforts to fully satisfy the obligations of his subpoena before his departure. Such a result would be especially burdensome for Mr. Forcieri, who has already ceased employment in the United States and has vacated his residence.

### 6. NML has other options to gather evidence.

As detailed in Bruch Hanna's November 4, 2014 letter, if NML requires additional discovery, it may avail itself of other options. NML is free to obtain evidence from Mr. Forcieri in the future. Argentina has been a signatory nation to the Hague Convention for many years. As NML has litigated its collection efforts against Argentina worldwide, there is no credible argument that it would be unduly burdensome to gather evidence from Mr. Forcieri in his own country and in his own language.

We urge the Court to confirm that Mr. Forcieri has satisfied his obligations under the subpoena. However, in the alternative (though a greatly less favored one), the Court could order

counsel to construct a mutually agreeable affidavit setting forth the specific questions to which Mr. Forcieri will assert his Constitutional privilege.  Finally, in the unlikely event that Mr. Forcieri must assert that privilege in person and on the record, we ask that the Court limit the deposition in scope and duration, for the purpose of confirming that Mr. Forcieri will assert his Fifth Amendment privilege as to the topics of NML's inquiry.

### IV.    Conclusion

Mr. Forcieri has made considerable efforts to negotiate in good faith and comply with his obligations under the subpoena.  By producing the only responsive document in his possession and speaking freely during the agreed-upon voluntary proffer, he has already fully complied with his obligations under the subpoena.  The Court should deny the Motion to Compel in its entirety.

Dated: November 5, 2014                    Respectfully submitted,

Gregory S. Bruch (DC Bar 413527)
Sandra M. Hanna (DC Bar 489358)
BRUCH HANNA LLP
1250 I Street, N.W., Suite 505
Washington, D.C.  20005
Telephone: (202) 969-1631
Fax: (202) 969-1625
gbruch@bruch-hanna.com
shanna@bruch-hanna.com

*Counsel to César Guido Forcieri*